IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEALER COMPUTER SERVICES, INC.,  §
                                 §
     Plaintiff,                  §
                                 §
v.                               §     CIVIL ACTION NO. H-10-719
                                 §
JOHNSON FORD LINCOLN MERCURY     §
NISSAN, INC.,                    §
                                 §
     Defendant.                  §

MEMORANDUM AND ORDER

Pending are Plaintiff Dealer Computer Services, Inc.'s Motion to Confirm Arbitration Award (Document No. 1) and Defendant Johnson Ford Lincoln Mercury Nissan, Inc.'s Motion to Vacate Arbitration Award (Document No. 5).  After carefully considering the motions, responses, the arbitration award, and the applicable law, the Court concludes for the reasons that follow that the Arbitration Decision and Award should be confirmed.

I.  Background

Plaintiff Dealer Computer Services, Inc. seeks judicial confirmation of a $284,087 award against Defendant Johnson Ford Lincoln Mercury Nissan, Inc. ("Johnson Ford") delivered by a panel of three arbitrators in Houston on March 3, 2010.  Johnson Ford moves to vacate the award because "it was in excess of the

arbitration panel's authority, in contravention to established law and in manifest disregard of the law."[1]

The underlying facts are that in 1993, Plaintiff sold to Johnson Ford, an owner of Ford dealerships, a 7000MP CPU pursuant to a contract.  Under the contract, Johnson Ford agreed to purchase certain peripherals and software applications, and to purchase hardware and software maintenance services.[2]  The parties performed under this contract for 13 years, during which time Johnson Ford made "numerous enhancements and modifications to the 7000MP computer system."[3]

In 2006, Plaintiff informed Johnson Ford that a new version of its software, Version 23.X, would require an upgrade from the 7000MP CPU to a 9000MPX model.[4]  Johnson Ford, however, believed the agreement did not require it to replace its 7000MP CPU for any software or hardware support provided by Plaintiff for the duration of the contract.[5]  Believing Plaintiff's requirement of an upgrade, and attendant statements that older versions of the software and hardware would not be supported after April 2007 to constitute a

---

[1] Document No. 5 at 1 (citing 9 U.S.C. § 10(a)(1) and (4)).

[2] Id. at 4.

[3] Id.

[4] Id.

[5] Id. at 3-4.

repudiation, Johnson Ford ceased paying Plaintiff's monthly invoices.[6]

The Johnson Ford contract is governed by Michigan law[7] and included an arbitration clause stating:

> Except as provided otherwise in this Agreement, all disputes, claims, controversies and other matters in question between the parties to the Agreement, arising out of, or relating to this Agreement, or to the breach thereof . . . shall be settled by arbitration . . . .[8]

The Johnson Ford arbitration was one of a number of arbitrations that Plaintiff has had with various dealers arising out of this form Contract and the need for an upgrade to the 9000MPX model. Plaintiff won some and lost some. Johnson Ford in this arbitration relied upon the prior <u>Ford Hammonasset</u> and <u>Kemp Ford</u> arbitration decisions to contend that the arbitration panel in this case should apply collateral estoppel against Plaintiff. Plaintiff, however, submitted to the arbitration panel evidence that *Plaintiff* had prevailed on the same form contract in four other arbitration decisions.[9] The arbitration panel declined to apply collateral estoppel based on the two arbitration decisions in favor of the dealers, and held that Johnson Ford had breached its

---

[6] <u>Id.</u> at 5-6.

[7] Document No. 6, ex. 1 at DCS 0014.

[8] <u>Id.</u>, ex. 1 at DCS 0013-0014.

[9] *See* Document No. 6 at 31-32; <u>id.</u>, exs. 11-14.

contract with Plaintiff, for which it awarded Plaintiff $284,087 in damages.

## II.  Discussion

As the party seeking to vacate the award, Johnson Ford bears the burden of proof.  *See* <u>Matter of Arbitration Between Trans Chem. Ltd. and China Nat'l Machinery Import & Export Corp.</u>, 978 F. Supp. 266, 303 (S.D. Tex. 1997) (Lake, J.), *adopted by* 161 F.3d 314, 319 (5th Cir. 1998).  A court's review of an arbitration award is "exceedingly deferential," and any doubt or uncertainty is resolved in favor of upholding the award.  <u>Brabham v. A.G. Edwards & Sons Inc.</u>, 376 F.3d 377, 380, 385 n.9 (5th Cir. 2004).[10]

Johnson Ford asserts that the panel exceeded its authority and manifestly disregarded the law.  "Manifest disregard of the law" is not a ground for vacatur.

> <u>Hall Street</u> restricts the grounds for vacatur to those set forth in § 10 of the Federal Arbitration Act (FAA or Act), 9 U.S.C. § 1 *et seq.*, and consequently, manifest disregard of the law is no longer an independent ground for vacating arbitration awards under the FAA.  <u>Hall Street</u> effectively overrules our previous authority to the contrary . . . .

---

[10]  Johnson Ford mistakenly relies upon Michigan law in enunciating the standard of review based on the contract's choice-of-law clause.  The "FAA rules apply absent clear and unambiguous contractual language to the contrary."  <u>Action Indus., Inc. v. U.S. Fid. & Guar. Co.</u>, 358 F.3d 337, 341 (5th Cir. 2004).  This contract contains no provision expressly and unambiguously adopting any different *arbitration review rules* or expressly modifying or replacing FAA rules.

4

<u>Citigroup Global Mkts., Inc. v. Bacon</u>, 562 F.3d 349, 350 (5th Cir. 2009) (discussing <u>Hall Street Assocs., L.L.C. v. Mattel, Inc.</u>, 128 S. Ct. 1396, 1403 (2008)).

In arguing that the panel exceeded its authority Johnson Ford is essentially seeking re-litigation of the issues that were before the arbitration panel.  Thus, it claims that the panel: (1) improperly interpreted the contract; (2) wrongfully refused to apply the doctrine of collateral estoppel in not following the decisions made by previous arbitration panels that ruled against Plaintiff; and (3) had insufficient evidence to support the amount of damages awarded.

A.   <u>Improper Contract Interpretation</u>

When an arbitration agreement vests arbitrators with the authority to interpret a contract, their construction must be enforced so long as it is "rationally inferable from the letter or purpose of the underlying agreement."  <u>Glover v. IBP, Inc.</u>, 334 F.3d 471, 474 (5th Cir. 2003) (quoting <u>Executone Info. Sys., Inc. v. Davis</u>, 26 F.3d 1314, 1320 (5th Cir. 1994)).  An award is rationally inferable from the underlying contract if it "in some logical way, [is] derived from the wording or purpose of the contract."  <u>Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.</u>, 918 F.2d 1215, 1218 (5th Cir. 1990) (internal quotations omitted).

Johnson Ford claims the arbitration panel erred in finding the contract unambiguous, because the term "dealer's computer system" in section 7(A)(3) was undefined, and nowhere is made synonymous with the term "In-Dealership Computer System."[11]   Johnson Ford has not shown that the arbitration panel's interpretation cannot be rationally inferred from the wording or purpose of the contract.

Section 7(A)(3) provides:

> FDCS [Plaintiff] will, from time-to-time, in its sole discretion, make Modifications and Enhancements to the Operating System and Application Programs.  During the term of this Agreement, [Johnson Ford] shall receive all generally released Enhancements/Modifications and Docu-mentation applicable thereto.  [Johnson Ford] acknow-ledges and agrees that these Enhancements/ Modifications may at times require changes or expansion to [Johnson Ford's] computer system such as computer power, memory, disk storage, ports, or peripherals.  [Johnson Ford] agrees to make such changes or expansion at its expense as a necessary cost of obtaining the added Software functionality provided by the Enhancements/Modifica-tions.[12]

Section 1 defines "FDCS In-Dealership Computer System" as "The FDCS computer system for automobile dealerships including but not limited to all Equipment, Software, and communications devices."[13] Equipment is defined as "All of the computer equipment listed in Schedule A and/or Schedule C, which is sold and/or maintained by

---

[11]  Document No. 5 at 15.

[12]  Document No. 6, ex. 1 at 8.

[13]  Id., ex. 1 at DCS 0001.

FDCS."[14]  The Equipment schedule listed the 7000MP CPU as just one
among many components.[15]

   Given this definition of a very similar term, and the fact
that section 7(A)(3) itself includes "peripherals" as *part* of a
"computer system," it was rational for the arbitration panel to
conclude that the 7000MP CPU was merely a part of the "computer
system," and thus that Plaintiff requiring its replacement was not
equivalent to Plaintiff requiring Johnson Ford to replace its
*entire* "computer system," and therefore not a breach of the
contract.

## B.   Failure to Apply Collateral Estoppel

   The arbitration panel did not give a rationale for denying
Johnson Ford's collateral estoppel argument, and it was not
required to.  *See* United Steelworkers of Am. v. Enter. Wheel & Car
Corp., 80 S. Ct. 1358, 1361 (1960).  Thus, unless the award was
"without foundation in reason or fact," it must be affirmed.  E.
Air Lines, Inc. v. Transp. Workers Union, AFL-CIO, Local 553, 580
F.2d 169, 173 (5th Cir. 1978) (citation omitted).  The fact that
prior arbitration panel decisions had sometimes sided *with*
Plaintiff and at other times *against* Plaintiff was ample
"foundation in reason or fact" for the arbitration panel not to

---

[14] Id.

[15] Id., ex. 1 at DCS 0029.

apply collateral estoppel to the contract interpretation. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 29 cmt. f (1982) ("Where a determination relied on as preclusive is itself inconsistent with some other adjudication of the same issue, that confidence [that the result is correct] is generally unwarranted.").

C.   Evidentiary Support for Damage Award

Finally, Johnson Ford argues that the amount of damages for breach of contract that the panel awarded lacked a sufficient evidentiary basis.   Upon inquiry from the Court at the Rule 16 scheduling conference, Johnson Ford's counsel stated that this was Defendant's best argument for vacatur.   Plaintiff correctly responded, however, that in weighing the conflicting evidence of both parties' damages experts, the panel adopted as "the more accurate calculations" *Johnson Ford's expert's* opinion of $137,897.82, *not* the larger sum sought by Plaintiff.   In other words, Johnson Ford's self-identified *best* argument for vacatur is that the panel erred by relying on *Johnson Ford's* own evidence in determining the amount of Plaintiff's damages.   Johnson Ford by its own words has demonstrated that its asserted grounds for vacatur are legally frivolous.

Because Johnson Ford's arguments for vacatur under 9 U.S.C. § 10 entirely lack merit, the award will be confirmed.

D.   Prejudgment Interest and Attorneys' Fees

Plaintiff seeks an award of both (1) prejudgment interest on the arbitration award since filing the arbitration action and (2) attorney's fees incurred during this confirmation proceeding.

1.   Prejudgment Interest

Under Michigan law prejudgment interest may not be awarded by a court where the arbitration panel does not award interest, unless the contract in question is not susceptible to an interpretation that would permit the arbitrators the authority to determine whether prejudgment interest should be awarded.  Holloway Constr. Co. v. Oakland Cnty. Bd. of Cnty. Road Comm'rs, 543 N.W.2d 923, 926-27 (Mich. 1996).  Here the arbitration clause provides that "all disputes, claims, controversies and other matters in question" shall be submitted to arbitration.[16]  This clause does not preclude the arbitrators from resolving any claim for prejudgment interest; thus, "[t]he question whether interest should be awarded pursuant to § 6013 is one for the arbitrators, and not this Court, to decide." Holloway Constr. Co., 543 N.W.2d at 927.  The arbitration panel did not award prejudgment interest to Plaintiff and Michigan law therefore does not support this Court doing so.[17]

---

[16] Document No. 6, ex. 1 at DCS 0013 - 0014.

[17] The same result would obtain under Texas law.  See Glover v. IBP, Inc., 334 F.3d 471, 477 (5th Cir. 2003) (although

Plaintiff is entitled, however, to post-judgment interest on this Court's Final Judgment, which award is governed by federal law. *See* Wash. Mut. Bank v. Crest Mortg. Co., 418 F. Supp. 2d 860, 863 (N.D. Tex. 2006) (citing Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 234 (5th Cir. 2002)); *see also* Mantle v. Upper Deck Co., 956 F. Supp. 719, 739 (N.D. Tex. 1997) ("The district court's judgment confirming an arbitration award is to have the same effect, in every respect, as is any other judgment entered by the court, and post-judgment interest is thus governed by statutory rates." (citing 9 U.S.C. § 13; Parsons & Whittemore Ala. Mach. & Servs. Corp. v. Yeargin Constr. Co., 744 F.2d 1482, 1484 (11th Cir. 1984))). Post-judgment interest will be awarded pursuant to 28 U.S.C. § 1961(a).

2.   Attorneys' Fees

The ordinary rule is that the FAA "does not provide for attorney's fees to a party who is successful in confirming an arbitration award in federal court." Trans Chem. Ltd. and China Nat'l Mach. Import & Export Corp., 978 F. Supp. 266, 311 (S.D. Tex. 1997) (Lake, J.). An exception to the rule applies, however, when

---

prevailing parties receive prejudgment interest as a matter of course under Texas law, when an arbitration agreement is "all encompassing" and the arbitration panel awarded no interest, "intervention by the court to award additional relief would be inconsistent with the language and policy of the Federal Arbitration Act" (quoting Schlobohm v. Pepperidge Farm, Inc., 806 F.2d 578, 580-81 (5th Cir. 1986))).

"the opponent's reasons for challenging the award are 'without merit' or 'without justification,' or are legally frivolous, that is, brought in bad faith to harass rather than to win." Id. (citing, *inter alia*, Executone Info. Sys. v. Davis, 26 F.3d 1314, 1331 (5th Cir. 1994)); *see also* Amalgamated Meat Cutters & Butchers Workmen of N. Am. AFL-CIO, Local Union 540 v. Great W. Food Co., 712 F.2d 122, 125 (5th Cir. 1983) ("A party to an arbitral award is not entitled to the attorneys' fees it incurs in enforcing that award unless the noncomplying party's refusal to abide by the award was 'without justification.'" (quoting Bell Prod. Eng'rs v. Bell Helicopter Textron, 688 F.2d 997, 999 (5th Cir. 1982))). The standard for such a finding is high, *see* Lummus Global Amazonas S.A. v. Aguaytia Energy Del Peru S.R. Ltda., 256 F. Supp. 2d 594, 648 (S.D. Tex. 2002) (Rosenthal, J.), but the finding is warranted here.[18]

---

[18] Plaintiff relies "on the parties' agreement," in which Johnson Ford agreed to reimburse Plaintiff for "any and all expenses [Plaintiff] may incur, including reasonable attorneys' fees, in collection of amounts due under this Agreement." Document No. 1; Document No. 6, ex. 1 at DCS 0013. The panel, however, had authority to award attorney's fees, and in fact did so in its Award. To award "additional relief" in the nature of attorney's fees based on the contract "would be inconsistent with the language and policy of the Federal Arbitration Act." Schlobohm, 806 F.2d at 581. Plaintiff's prayer for fees and expenses is granted not because of the contractual proviso, which was within the purview of the arbitration panel, but rather because Johnson Ford, after issuance of the arbitral award, had no legally non-frivolous reason not to comply with the award or to move for its vacatur.

11

Johnson Ford has proffered no legally non-frivolous reason to vacate the arbitration award and its failure to comply with the award was wholly unjustified.  In sum, Johnson Ford relied upon: (1) manifest disregard for the law, a grounds expressly repudiated by the Fifth Circuit's interpretation of Hall Street more than a year ago; (2) a claim that the arbitration panel's award was not "rationally inferable" from the contract based only upon Johnson Ford's preferred interpretation of the contract; (3) a claim that collateral estoppel should have been applied in Defendant's favor, even though four of the six prior arbitration awards cited to the panel held *in favor* of Plaintiff; and (4) --its "best argument" for vacatur--the contention that the panel had insufficient evidence for its award of damages when in fact it adopted the damages calculation of *Johnson Ford's own expert*.  In no way was Johnson Ford "selective in its challenges to the award." *Cf.* Lummus, 256 F. Supp. 2d at 648.  Instead, it relies on grounds that either are totally lacking in merit or "are not even legally cognizable bases for not enforcing an arbitration award." Union of Transp. Emps. v. Oil Transp. Co., 591 F. Supp. 439, 448 (N.D. Tex. 1984).

The Court therefore concludes that Plaintiff is entitled to recover its reasonable attorneys' fees and expenses incurred in pursuing this confirmation action.  The "lodestar" method is used to calculate reasonable attorneys' fees, with adjustments as warranted. *See* Heidtman v. County of El Paso, 171 F.3d 1038, 1043

12

(5th Cir. 1999); *accord* <u>Skidmore Energy, Inc. v. KPMG</u>, 455 F.3d 564, 568-69 (5th Cir. 2006); *see also* <u>Shipes v. Trinity Indus.</u>, 987 F.2d 311, 319 (5th Cir. 1993); <u>Johnson v. Georgia Highway Express</u>, 488 F.2d 714, 717-19 (5th Cir. 1974).  Plaintiff's proof is that two attorneys worked on Plaintiff's case, one who spent two hours preparing the motion to confirm arbitration award and proposed judgment, at a billed hourly rate of $250[19]; and the second who spent 18 hours responding to Johnson Ford's motion to vacate the arbitration award, at a billed hourly rate of $210.[20]  The total attorneys' fees based on these rates and times alone is thus $4,280.  Plaintiff's attorneys additionally incurred $350 in expenses, for a total of $4,630 in fees and expenses.  The Court finds that the hourly rates and time spent were reasonable and necessary, that they are in accordance with local practice and are fully justified by the case at hand.  The Court has reviewed the <u>Johnson</u> factors and finds no need to adjust the lodestar amount based on those factors.

### III.  <u>Order</u>

For the foregoing reasons, it is

ORDERED that Plaintiff Dealer Computer Services, Inc.'s Motion to Confirm Arbitration Award (Document No. 1) is GRANTED, Defendant

---

[19] Document No. 1, ex. 5.

[20] Document No. 12.

Johnson Ford Lincoln Mercury Nissan, Inc.'s Motion to Vacate Arbitration Award (Document No. 5) is DENIED, and it is therefore

ORDERED and ADJUDGED that the Final Award in American Arbitration Association Case No. 701170033608, <u>Dealer Computer Services, Inc. f/k/a Ford Dealer Computer Services, Inc. v. Johnson Ford-Lincoln-Mercury-Nissan, Inc.</u>, a copy of which is attached hereto, is in all things CONFIRMED and ADOPTED as the Judgment of this Court. It is further

ORDERED that Plaintiff Dealer Computer Services, Inc. shall additionally have and recover from Defendant Johnson Ford Lincoln Mercury Nissan, Inc. reasonable attorneys' fees and other court and direct costs incurred by them in connection with this confirmation action in the amount of FOUR THOUSAND SIX HUNDRED THIRTY AND NO/100 DOLLARS ($4,630.00), together with interest at the rate of .28% per annum, compounded annually, on all unpaid portions hereof from the date of this Judgment until paid.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this <u>26th</u> day of July, 2010.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

14

### AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| Dealer Computer Services, Inc. f/k/a<br>Ford Dealer Computer Services, Inc.,<br><br>                  Claimant,<br><br>and<br><br>Johnson Ford-Lincoln-Mercury-Nissan, Inc.<br>Houston, Texas,<br><br>        Respondent/Counter-Claimant. | )<br>)<br>)<br>)<br>)<br>)<br>)    No. 701170033608<br>)<br>)<br>)<br>)<br>)<br>) |

## ARBITRATION DECISION AND AWARD

This matter was heard by a three-member arbitration panel, convened under and governed by the AAA Commercial Arbitration Rules and the parties' contract. The Panel is providing a reasoned award by agreement of the parties and the Panel hereby issues this unanimous arbitration decision and award.

### Procedural and Factual Background

Claimant Dealer Computer Systems, Inc. ("DCS") initiated this arbitration against its former customer, Respondent-Counter-Claimant Johnson Ford-Lincoln Mercury Nissan, Inc. ("Johnson Ford") for adjudication relating to a long-term computer services contract executed in 1992. Under that contract, DCS provided hardware, licensed software and ongoing hardware and software support services. The contract was amended numerous times, with the parties adding hardware and peripherals, and adding and updating the software, usually on a yearly basis. In the Summer of 2006, DCS informed Johnson Ford that it had a new version "23X" of its software, but that in order to upload and run it DCS would need to purchase a new Series 9000X Computer box or processor. DCS informed Johnson Ford that if Johnson Ford did not get the new 9000X it would be unable to support its system in the future.

1

EXHIBIT ( 1 )

Johnson Ford, through its President, Gary Johnson, demurred. Mr. Johnson indicated he did not believe he had an obligation under the contract to buy a new computer processor. DCS insisted he did.

Mr. Johnson had been previously negotiating with other computer services providers and executed a contract with ADP on January 31, 2007 to obtain a new computer system and related services from ADP even though his contract with DCS ran through September 2008. He told DCS he did not want and would not pay for the 9000X. DCS continued to support Johnson Ford's hardware and software through at least July 1, 2007. At that time, Mr. Johnson stopped paying DCS invoices.

DCS demanded contract security for Johnson Ford's performance. Johnson Ford never responded. Johnson Ford placed the ADP computer system in service in late June 2007 and stopped using the DCS provided system.

In January 2008, DCS instituted this arbitration. DCS' statement of claims asserts a claim for breach of contract based on Johnson Ford's failure to make the hardware upgrade to the 9000X to support the version 23X software (¶10) and claims Johnson Ford repudiated the contract by signing with ADP and using its system, not the one provided by DCS (¶11) and by failing to provide adequate security of performance when DCS requested it (¶12). DCS also claimed that Johnson Ford breached by failing to make timely payment of invoices (¶13). DCS requested damages for past due invoices, lost profits, its attorneys' fees and expenses and costs of arbitration.

Johnson Ford, in turn, counterclaimed for breach of contract, claiming DCS breached by failing to support Johnson Ford's system after it released the version 23X software (¶18). It also claimed the same failure was a repudiation of the contract (¶20) and a breach of warranty (¶22). It claimed DCS defrauded Johnson Ford by representations regarding how long the computer

2

system would last (¶24). It claimed the contract was unconscionable (¶¶ 26-28). Its counterclaim sought rescission, damages, punitive damages, equitable rescission, a declaratory judgment about its obligations under the contract, attorneys' fees and costs.

The Panel had a preliminary scheduling hearing in 2009. The parties conducted discovery and submitted various prehearing matters to the Panel that were ruled upon.

The Panel conducted a hearing on the merits, as scheduled, from January 25, 2010 to January 28, 2010. Each side presented documentary evidence and oral testimony from witnesses. Each party was given a complete opportunity to present any evidence and argument it wished.

Each party was then given the opportunity to file supplemental affidavits on attorneys' fees incurred through hearing and to file further briefing on legal issues relating its attorneys' fees and they did so on February 8, 2010. The hearing was closed February 8, 2010 after receipt of the final briefs.

<u>Factual Findings</u>

The Panel will not repeat here all the evidence it heard. It sets forth here the factual findings it made to support the award made.

The parties understood they had a legally and binding contract. They performed under that contract for fourteen years. The Panel did not hear any evidence to conclude the contract or other any of its terms were unconscionable.

DCS created a new software version 23X that required that Johnson Ford's computer server, the 7000 MP, be changed to a new 9000X. There was no credible evidence that the 23X would function on the existing 7000 MP or that it would be practical to redesign the software to do so.

DCS offered to sell the 9000X with no contract extension to Johnson Ford for $30,000. The Panel believes this was a fair and commercially reasonable amount, in compliance with the

terms of the contract. Mr. Johnson rejected this amount and indicated he would not buy a new processor and he would not extend the contract. Mr. Johnson had the opportunity to comply with the contract by agreeing to purchase a new processor for $30,000 without any extension of the contract term and he declined that opportunity. He testified the only "reasonable" amount he would have paid was nothing -- that DCS should have provided the 9000X for free. Mr. Johnson made no counterproposal and made no effort to reach an agreement with DCS on terms where *i.e.* he could get the 9000X so that he could operate the 23X software. Johnson Ford raised the argument that DCS breached the agreement by attempting to force Johnson Ford to extend the contract term in order to get support for the new 23X version software. The Panel agrees that if that happened, it would have been a breach. The Panel considered this issue closely and the Panel factually finds that this did not happen and therefore DCS did not breach.

The Panel finds no ambiguity in the contract. Johnson Ford asserted that the term "computer system" meant only the computer processor, the box, not the entire configuration of processor, the terminals, monitors, and peripherals. It asserted that ¶ 7(a)(3) of the contract only permitted DCS to make "changes" "to" the computer "system" (the box) and that a replacement of the 7000 MP was not a "change" "to" the box. We disagree. The "computer system" is not ambiguous and refers to the entire configuration. Even if it only referred to the box, it makes no difference here. The box was replaced. The Panel believes a "replacement" is a "change" "to" the computer system.

Even if the terms "change" or "computer system" were ambiguous, the Panel did not hear any credible evidence of the parties' intent that a computer system was only a box or that a change to the system would not be a replacement of the box. Mr. Johnson did not read these provisions and formed no specific intent as to their meaning. Johnson Ford's tendered expert, Mr. Hilliard, admitted a "computer system" could be the box or configuration. The Panel did not

4

find his testimony helpful or credible on the contract's meaning, even assuming it were ambiguous.

As for damages, DCS' in-house accountant, Ms. Robinson, and Johnson Ford's expert, Mr. Schulke, agreed on the methodology.  They disagreed about whether Ms. Robinson captured all avoidable costs in her calculations.  Mr. Schulke used a percentage of costs of goods sold. While this was a close question, as DCS controlled the financial information, the Panel cannot verify all costs associated with the contract, and we conclude Ms. Robinson's report is incomplete and that Mr. Schulke's calculation of $137,897.82 (see supplement to his report December 1, 2009, p. 2, item 3), represents the more accurate calculations of lost profit damages.

Legal Analysis

In applying these facts to the legal theories advanced by the parties, we conclude as follows:

Johnson Ford breached the contract.  The contract provided in ¶ 7(a)(3) in plain terms as follows:

> FDCS will, from time to time, in its sole discretion, make Modifications and Enhancements to the Operating System and Application Programs.  During the term of this Agreement, Dealer shall receive all generally released Enhancements/Modifications and Documentation applicable thereto.  Dealer acknowledges and agrees that these Enhancements/Modifications may at times require changes or expansion to Dealer's computer system such as computer power, memory, disk storage, ports, or peripherals.  Dealer agrees to make such changes or expansion at its expense as a necessary cost of obtaining the added software functionality provided by the Enhancements/Modifications.

This paragraph is unambiguous.  DCS could provide software changes and Johnson Ford was obligated to receive and use them and, if necessary, make changes to its computer system, including the processor, at a reasonable cost, to run the software.  A replacement is a change.

Johnson Ford did not change the 7000 MP or upgrade the software.  DCS could not download the 23X or fully support the 22X software, the prior version being used at Johnson

5

Ford. Johnson Ford stopped using the DCS provided system and stopped paying its invoices. Those actions were a breach of the contract.

DCS was damaged as a proximate result of Johnson Ford's breaches. It incurred damages for the unpaid invoices and for the profits it lost for payments not made for services under the contract for the remaining period of the contract through September 2008, less its avoidable costs. We finds those total damages to be, as calculated by Johnson Ford's expert, Mr. Schulke, $137,897.82.

The contract was not unconscionable. There is no legal basis to rescind it. DCS did not breach the agreement by providing a new software version 23X or by requiring DCS to purchase a 9000 X processor for a commercially reasonable cost of $30,000. It did not breach the agreement by failing to fully support version 22 where Johnson Ford refused to upgrade its processor to run the 23X version. There is no legal basis for any of the other relief requested in Johnson Ford's counterclaims.

As for attorneys' fees, expenses and the expenses of arbitration, we conclude as follows: We considered the relevant factors for an award of attorneys' fees under Michigan law, the parties' contract and the AAA rules. Mr. Allen outlined the bases for his fees in narrative testimony and in his affidavit filed February 8, 2010, and he provided testimony in support of the various factors related to an award of fees. His total fees amounted to $155,991.00. Mr. Counts, in turn, provided a narrative for attorneys' fees incurred by Johnson Ford and an affidavit filed February 8, 2010. Johnson Ford's total fees through trial were $100,517.50.

There is a disparity in the amount of fees incurred by both sides. In our opinion, DCS is the prevailing party under the contract, and pursuant to the AAA rules and Michigan law, is entitled to an award of attorneys' fees. In our discretion, we do not believe all the fees should be recovered, as we believe some of the work was excessive and not reasonably incurred. Mr.

6

Allen and his firm have long experience in handling these cases and have handled many of these cases with similar or the same contract terms. On the other hand, Johnson Ford's defenses and, in particular, its pre-hearing motions and its reliance on experts, greatly increased the costs of the case. Considering these facts and the other relevant factors under *Crawly v. Schick*, 211 N.W.2d 217 (1973) and *Zeeland Farm Services, Inc. v. JBL Enterprises, Inc.*, 555 N.W.2d 733, 736 (Mich. App. 1996), we believe that a fair compensation of attorneys' fees and the attorneys' fees reasonably incurred in asserting this action is in the amount of $120,000. We do not find Mr. Counts' opinion credible that $40,000.00 is a fair amount for DCS' attorneys' fees, particularly where Mr. Counts himself charged $100,517.50 in the same case and where Johnson Ford filed numerous pretrial motions, a lengthy motion for summary judgment and presented lengthy expert testimony from three experts at a cost of $38,291.77. We believe DCS' claimed costs incurred of $26,189.28 were reasonably incurred and necessary in prosecuting the action and in responding to the defenses raised. This is particularly so where Johnson Ford itself incurred $17,515.85 in expenses and $38,291.77 in expert expenses.

We understand the award of the costs of arbitration is in the discretion of the Panel. We conclude, considering all of the evidence and the issues raised, that it is most equitable in this case that each party bear its own costs of arbitration incurred and that there be no award to either party for the costs incurred by the opposing party with respect to the arbitration itself.

### Conclusion and Award

For these reasons, based on the evidence presented, the factual findings made by the Panel and in the exercise of the Panel's discretion, the Panel awards:

    1.    Award in favor of DCS and against Johnson Ford for breach of contract. Johnson Ford shall pay damages to DCS for breach of contract of One Hundred Thirty-Seven Thousand, Eight Hundred Ninety-Seven and 82/100 Dollars ($137,897.82);

2.     Award in favor of DCS and against Johnson Ford for attorneys' fees.  Johnson Ford shall pay a portion of DCS' incurred attorneys' fees in the amount of $120,000;

3.     Award in favor of DCS and against Johnson Ford for costs and expenses. Johnson Ford shall pay DCS' expenses of $26,189.28.

4.     Award in favor of DCS and against Johnson Ford on each of Johnson Ford's counterclaims.

5.     No award to either party for arbitration expenses.  Each party shall pay their own expenses of the arbitration as incurred.

6.     Any other claims, counterclaims, or defenses not adjudicated above are hereby denied.

7.     This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

DATED: 2/26/10

_____
Daniel P. Albers
Panel Chair

DATED: _____

_____
Robert A. Poklar

DATED: _____

_____
Rick L. Oldenettel

CHDS01 DPA 583694v1

8

2.      Award in favor of DCS and against Johnson Ford for attorneys' fees.  Johnson Ford shall pay a portion of DCS' incurred attorneys' fees in the amount of $120,000;

3.      Award in favor of DCS and against Johnson Ford for costs and expenses. Johnson Ford shall pay DCS' expenses of $26,189.28.

4.      Award in favor of DCS and against Johnson Ford on each of Johnson Ford's counterclaims.

5.      No award to either party for arbitration expenses.  Each party shall pay their own expenses of the arbitration as incurred.

6.      Any other claims, counterclaims, or defenses not adjudicated above are hereby denied.

7.      This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.


DATED: _____                    _____
                                                            Daniel P. Albers
                                                            Panel Chair

DATED: 2/26/10                                 _____
                                                            Robert A. Poklar

DATED: _____                    _____
                                                            Rick L. Oldenettel


CHDS01 DPA 583694v1

8

1.      Award in favor of DCS and against Johnson Ford for breach of contract. Johnson Ford shall pay damages to DCS for breach of contract of One Hundred Thirty-Seven Thousand, Eight Hundred Ninety-Seven and 82/100 Dollars ($137,897.82);

2.      Award in favor of DCS and against Johnson Ford for attorneys' fees. Johnson Ford shall pay a portion of DCS' incurred attorneys' fees in the amount of $120,000;

3.      Award in favor of DCS and against Johnson Ford for costs and expenses. Johnson Ford shall pay DCS' expenses of $26,189.28.

4.      Award in favor of DCS and against Johnson Ford on each of Johnson Ford's counterclaims.

5.      No award to either party for arbitration expenses. Each party shall pay their own expenses of the arbitration as incurred.

6.      Any other claims, counterclaims, or defenses not adjudicated above are hereby denied.

7.      This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.


DATED: _____            _____
                                    Daniel P. Albers
                                    Panel Chair


DATED: _____            _____
                                    Robert A. Pokiar

DATED: _3/3/10_                     _____
                                    Rick L. Oldenettel


CHDS01 DPA 583694v1

8